UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:14-cr-40032-SLD |
| KYLE JOSEPH WILSON, | ) ) ) |
| Defendant. | ) |

ORDER

Before the Court are Defendant Kyle Joseph Wilson's pro se motion for compassionate release, ECF No. 23, counseled Amended Motion for Compassionate Release, ECF No. 32, and Motion for Leave to File Exhibit #3 Under Seal, ECF No. 33, and the United States' Motion to File Exhibit Under Seal, ECF No. 35. For the reasons that follow, the motions for leave to file under seal are GRANTED, and the motions for compassionate release are DENIED.

**BACKGROUND**

On November 5, 2015, Defendant was sentenced to 144 months of imprisonment for distribution of heroin resulting in death. Judgment 1–2, ECF No. 17. He is currently serving his sentence at Federal Correctional Institution ("FCI") Memphis in Memphis, Tennessee and is scheduled to be released August 28, 2024. *See Find an Inmate*, Fed. Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (search for "Kyle" with "Joseph" with "Wilson") (last visited June 4, 2021). In light of the ongoing COVID-19 pandemic, Defendant filed a pro se motion for an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court appointed the Federal Public Defender to represent Defendant with respect to this motion. *See* Nov. 24, 2020 Text Order. An amended motion was filed by counsel on March 27, 2021. The United States opposes Defendant's request for compassionate release. Resp., ECF No. 36.

1

# DISCUSSION

## I.   Legal Standard

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances. 18 U.S.C. § 3582(b). As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). "[T]he movant bears the burden of establishing extraordinary and compelling reasons that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021) (quotation marks omitted).

## II.   Analysis

Defendant argues that he has established extraordinary and compelling reasons for release because he is overweight and has chronic medical conditions (asthma, hypertension, hyperlipidemia, traumatic brain injury, hepatitis C, epilepsy, mononeuropathy of his lower limb, astigmatism, and an inguinal hernia), some of which put him at increased risk for developing severe illness from COVID-19 and because his facility, FCI Memphis, has had a serious outbreak of COVID-19. *See* Am. Mot. Compassionate Release 6–10. He also argues "that the §[]3553(a) factors weigh in favor of his receiving a compassionate release to home confinement." *Id.* at 16–17. The United States argues the Court should deny Defendant's motion because he "already contracted COVID-19 and experienced no symptoms," because "he

has received the first dose of a COVID-19 vaccine," and because the § 3553(a) factors "weigh heavily against release."  Resp. 1.[1]

The compassionate release statute directs the Court to determine: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission"; and 3) whether a reduction would be consistent with the factors listed in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A).  The Seventh Circuit, however, recently held that there is no applicable policy statement with which a sentence reduction must be consistent.  *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

This Court has found extraordinary and compelling circumstances exist when an individual is at risk for severe illness from COVID-19.  *See United States v. Vasquez*, Case No. 2:17-cr-20003-SLD, 2021 WL 1428473, at *2 (C.D. Ill. Apr. 15, 2021).  And here, Defendant has various conditions that may put him at increased risk for severe illness from COVID-19: he has hypertension and he has liver disease (hepatitis C).[2]  *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention

---

[1] The United States concedes that Defendant has met the exhaustion requirement. Resp. 15.  The Court therefore need not address it.  *Cf. United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it." (citations omitted)).

[2] The medical records Defendant provided do not suggest that his asthma is moderate to severe, which is the only type of asthma the Centers for Disease Control and Prevention ("CDC") recognizes may increase risk for severe illness from COVID-19.  *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html (last updated May 13, 2021).  And the medical records provided by the United States suggest that Defendant is not overweight, as he contends, *see* Am. Mot. Compassionate Release 7.  He contends that he is 5 foot 11 inches tall and 180 pounds and has a body mass index ("BMI") of 25.1, *id.*, which is just over the threshold for being overweight, *see Calculate Your Body Mass Index*, Nat'l Heart, Lung, & Blood Inst., https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited June 4, 2021).  But a medical record from February 8, 2021 indicates that Defendant is only 175 pounds, which would mean he has a BMI of 24.4, which is under the threshold for being overweight, *id.*

("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021); *see Newton*, 2021 WL 1747898, at *3, *5 (suggesting that district courts should consider the risk for severe illness from COVID-19 posed by an individual's underlying health conditions cumulatively in addition to individually and finding a district court abused its discretion in concluding that a movant was not at risk when he had multiple conditions the CDC stated might increase risk for serious illness).

Complicating this analysis, however, is that Defendant has already had COVID-19, recovered, and apparently suffered no symptoms. *See* Am. Mot. Compassionate Release 7; Resp. 15. Defendant argues that his "previous bout with COVID-19 . . . provides him little or no assurance that he is not at risk of re-infection of the deadly disease." Am. Mot. Compassionate Release 7. The United States acknowledges that reinfection is possible but argues that it is rare and that "[t]here is no need to speculate whether *this* [D]efendant might be part of the small subset of people who could suffer serious complications if they contract COVID-19" because he suffered no adverse effects during his first infection. Resp. 15–17. The CDC acknowledges that "[c]ases of reinfection with COVID-19 have been reported" but state that they "remain rare." *Reinfection with COVID-19*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020). The CDC also states that "[t]he immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood." *Clinical Questions about COVID-19: Questions and Answers*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last updated Mar. 4, 2021) (scroll to "Transmission" and click on "Can people who recover from COVID-19 be re-

infected with SARS-CoV-2?"). And it notes that "[o]ngoing COVID-19 studies will help establish the frequency and severity of reinfection and who might be at higher risk for reinfection." *Id.* It appears that reinfection is possible, but the Court is not in a position to—based on the limited studies available of a still novel virus—determine whether reinfection is probable or, more importantly, whether a second infection would be likely to follow the same course as a first infection. *See Newton*, 2021 WL 1747898, at *4 ("District courts must base factual conclusions on record evidence; they cannot render unsupported medical opinions."). Therefore, the Court is inclined to find that extraoardinary and compelling reasons for release exist.[3]

However, the Court finds that compassionate release is unwarranted after consideration of the § 3553(a) factors. These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A); "the need for the sentence imposed to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B); and "the need for the sentence imposed to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C).

Defendant's crime was incredibly serious. He injected a woman ("KS") with heroin and she died as a result. Revised Presentence Investigation Report ¶¶ 15, 17, ECF No. 11. KS was supposed to give Defendant a ride to a residential drug treatment

---

[3] Though the United States argues that Defendant's vaccination cuts against a finding of extraordinary and compelling reasons for release, Resp. 17–18, the evidence before the Court shows only that Defendant has received one dose of the Pfizer-BioNTech vaccine. Presumably he has received his second dose by now, but the Court has no evidence that he did. Therefore, the Court will not consider whether his vaccination status undermines his claim of extraordinary and compelling reasons for release due to COVID-19.

facility, but after she picked Defendant up, they arranged to purchase heroin. *See id.* ¶¶ 10–13. After purchasing the heroin, KS purchased injection supplies at a CVS. *Id.* ¶ 14. Defendant injected himself and KS with heroin in the CVS parking lot. *Id.* ¶ 15. KS became unconscious, and her lips turned blue. *Id.* After reviving her, Defendant drove KS to her apartment and placed her on the couch. *Id.* ¶ 16. She died overnight. *Id.* ¶ 17. In the morning, Defendant took some of KS's property and pawned it. *Id.* ¶¶ 18–20. KS's sisters later found her body when they came to check on her. *Id.* ¶ 22.

Defendant was sentenced to 144 months of imprisonment. *See* Judgment 2. He has been in custody since May 2014 and therefore has served approximately seven years of his twelve-year sentence. *See* Revised Presentence Investigation Report 1. He is not scheduled to be released, considering good time credits, until August 2024. *See Find an Inmate*, *supra*. The Court finds that to release Defendant now would undercut the seriousness of the offense and undermine the need to provide for adequate deterrence.

Moreover, KS's family opposes Defendant's release. In a letter signed by KS's sisters, mother, nieces and nephews, brothers-in-law, and great nephew, the family described how Defendant's actions have affected them. *See* Victim Letter, Resp. Ex. 1, ECF No. 36-1. They wrote: "Our family does not feel a compassionate release should be given. Every day we have to pay the price for the decision [Defendant] made when he failed to take action that would have saved our sister's life. He requests compassion yet does not display it himself." *Id.* They request that Defendant be required to serve out his sentence. *Id.* Releasing Defendant now—against the victim's family's wishes—would undermine the need to promote respect for the law and provide just punishment.

Defendant argues that his strong rehabilitative efforts and conduct in prison weigh in favor of his release. *See* Am. Mot. Compassionate Release 16. He indicates that he has earned his GED, has completed drug treatment, has participated in BOP-sponsored courses and educational and vocational training, has enrolled in the American Bible Academy, is assigned to a prison work program (UNICOR), and is undergoing suicide watch companion training. *Id.* at 16–17. He acknowledges that "[h]e has a medium PATTERN score and has been issued three disciplinary tickets" but notes that he has not received any tickets in the last nine months. *Id.* at 17. The Court commends Defendant for his efforts at self-improvement in prison but ultimately finds that, considering the seriousness of the offense, the time Defendant has left to serve, and KS's family's opposition to his release, release is unwarranted.

## CONCLUSION

Accordingly, Defendant Kyle Joseph Wilson's pro se motion for compassionate release, ECF No. 23, and counseled Amended Motion for Compassionate Release, ECF No. 32, are DENIED. Defendant's Motion for Leave to File Exhibit #3 Under Seal, ECF No. 33, and the United States' Motion to File Exhibit Under Seal, ECF No. 35, are GRANTED because Defendant's private records should be sealed.

Entered this 4th day of June, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
